IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Case No. 23-cv-00409-PAB-NRN

BENJAMIN A. JUAREZ, an individual,

      Plaintiff,

v.

CITY AND COUNTY OF DENVER, DEPARTMENT OF AVIATION, a municipal
government entity,

      Defendant.
_____

**ORDER**
_____

      This matter is before the Court on defendant's Motion to Dismiss [Docket No. 28],

filed by the City and County of Denver, Department of Aviation (the "City").  Plaintiff

Benjamin Juarez filed a response.  Docket No. 31.  The City filed a reply.  Docket No.

32.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.    BACKGROUND[1]

      Mr. Juarez is a thirty-seven-year-old male U.S. citizen who was born in Belize.

Docket No. 24 at 2, 4, ¶¶ 1, 17-18.  Mr. Juarez identifies his color as "Brown" and his

national origin as "Hispanic and/or Mestizo."  *Id.*, ¶¶ 19-20.  Mr. Juarez has a bachelor's

degree in mathematics and computer science, as well as a master's degree in business

administration.  *Id.*, ¶ 22.

_____

[1] The facts below are taken from plaintiff's amended complaint (the "complaint"),
Docket No. 24, and are presumed to be true for purposes of ruling on defendant's
motion to dismiss.  *See Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

Mr. Juarez was employed by the City in the Parking and Transportation Department (the "Department") at the Denver International Airport ("DIA") from November 2017 to March 4, 2022. *Id.* at 3, ¶¶ 14-15. In 2017, Mr. Juarez began his employment with the Department as a manager. *Id.* at 4, ¶ 16. In February 2020, the City promoted Mr. Juarez to Director of Parking, with an official job classification of "Airport Commercial Director." *Id.* at 6, ¶ 41. Mr. Juarez's salary in this position was $120,000. *Id.*, ¶ 44.

Winfred Hensley, a white man, was the Department's Senior Vice President and served as Mr. Juarez's direct supervisor throughout Mr. Juarez's employment. *Id.* at 4, ¶¶ 24-25. Steve Jaquith, a white man, served as the Chief Operating Officer at DIA and Laura Coburn, a white female, served as the Director of Human Resources at DIA. *Id.* at 5, ¶¶ 30, 32.

After Mr. Juarez's promotion, Mr. Hensley hired Brian Kramer, a white man, as Director of Commercial Transportation, with an official job classification of "Airport Commercial Director." *Id.* at 6, ¶¶ 42-43. Mr. Kramer's salary in this position was $138,000, which was $18,000 higher than Mr. Juarez's salary. *Id.*, ¶ 44. Mr. Juarez's position required him to perform more complex duties than Mr. Kramer's position. *Id.* at 25, ¶ 161. Around May or June 2021, Mr. Juarez complained to Mr. Hensley about the pay disparity between his and Mr. Kramer's salaries. *Id.* at 7, ¶¶ 49-50. Mr. Hensley informed Mr. Juarez that he would investigate the alleged pay disparity; however, the City never conducted an investigation. *Id.*, ¶¶ 51-52.

On May 13, 2021, Mr. Juarez informed Mr. Hensley and his staff that Phillip Washington, a Black man, would be announced as the incoming Chief Executive Officer

of DIA.  *Id*. at 4, 8, ¶¶ 26, 53.  On May 17, 2021, Mr. Juarez advocated for the Department to promote John Doe,[2] a Black man, who was one of Mr. Juarez's subordinates.  *Id*. at 8, ¶¶ 54-55.  Mr. Hensley initially questioned Mr. Doe's qualifications for the position; however, on May 18, 2021, Mr. Hensley stated, "Yes, let's hire a Black guy to sit up front, so it looks good when Phil [Washington] comes down to our office."  *Id*., ¶¶ 56, 58.  That same day, Mr. Hensley repeated similar language about "hiring a black guy" to Ms. Smith,[3] the hiring manager for the position.  *Id*., ¶¶ 59-60.  After Mr. Doe accepted the promotion, Ms. Smith heard Mr. Hensley state that bringing Mr. Doe on board would make Mr. Hensley look good in front of Mr. Washington because Mr. Doe is Black.  *Id*., ¶ 61.

The City promoted Mr. Doe and gave him a seven percent salary increase.  *Id*. at 9, ¶ 63.  Around the same time, the City promoted a white male employee, Frank Keith, and gave him a thirty-seven percent salary increase.  *Id*., ¶ 64.  After Mr. Doe's promotion, Mr. Juarez complained to Mr. Hensley, Ms. Coburn, Mr. Jaquith, and Mr. Washington about the discriminatory pay provided to Mr. Doe.  *Id*., ¶ 65.  In July 2021, Mr. Juarez complained again to Mr. Hensley about the pay disparity between his and Mr. Kramer's salaries, as well as discriminatory pay practices affecting other minorities in the Department.  *Id*., ¶ 66.

On September 17, 2021, Mr. Juarez complained to Ms. Coburn about the pay disparity between his and Mr. Kramer's salaries, as well as discriminatory pay practices affecting other minorities in the Department.  *Id*. at 10, ¶ 71.  In response, Ms. Coburn

---

[2] The complaint states that John Doe is a pseudonym.  Docket No. 24 at 8 n.1.
[3] The complaint states that Ms. Smith is a pseudonym.  Docket No. 24 at 8 n.2.

told Mr. Juarez, "you're being paid equitably." *Id.*, ¶ 72. That same day, Mr. Juarez complained again to Mr. Hensley about his pay disparity. *Id.*, ¶ 73. On September 24, 2021, Mr. Juarez complained to Ms. Coburn and another human resources employee about the pay disparities. *Id.*, ¶ 74.

On October 19, 2021, Mr. Jaquith issued Mr. Juarez a notification of contemplated discipline (the "October 2021 Notification"), which alleged that Mr. Juarez engaged in misconduct and informed Mr. Juarez that he could be subject to discipline, including dismissal. *Id.* at 10-11, ¶¶ 75-76, 78. Mr. Juarez did not engage in the alleged misconduct. *Id.* at 11, ¶ 77. Previously, Mr. Juarez had never been subject to any proposed disciplinary action during his employment with the City. *Id.*, ¶ 80. On October 20, 2021, the City changed Mr. Juarez's job duties without informing him of the change. *Id.*, ¶ 81. On October 28, 2021, Mr. Juarez filed a response to the October 2021 Notification, denying that he engaged in any misconduct and complaining that he was being subjected to retaliation "for advocating proper controls in setting wages within Parking and Transportation that are creating economic disadvantages specifically for minorities[,] including myself." *Id.*, ¶ 82. On November 19, 2021, the City issued a disciplinary decision (the "November 2021 Decision") imposing a written reprimand on Mr. Juarez and warning him that "[f]urther misconduct may be cause for additional disciplinary action, up to and including dismissal." *Id.*, ¶¶ 83-84.[4] Mr. Juarez feared that the November 2021 Decision could harm his professional career. *Id.* at 12, ¶ 85.

---

[4] The complaint states in paragraph 83 that the disciplinary decision was issued on November 19, 2022. Docket No. 24 at 11, ¶ 83. However, the Court presumes that the reference to 2022 is a typographical error because the complaint repeatedly states that defendant issued this decision in November 2021. *See id.* at 12, 22, ¶¶ 85-86, 144(5).

After the November 2021 Decision, Mr. Juarez complained to Mr. Washington about (i) the pay disparity between his and Mr. Kramer's salaries; (ii) discriminatory pay practices affecting other minorities in the Department; and (iii) the retaliation Mr. Juarez was experiencing, including the written reprimand. *Id*., ¶ 86.  On December 3, 2021, Mr. Juarez filed a dispute resolution request and a mediation request with the Career Service Authority to report that the City was retaliating against him for advocating "for proper controls in setting wages within the . . . Department and the lack of controls creating economic disadvantages specifically for minorities, including himself." *Id*., ¶¶ 87-88.  On December 7, 2021, the City placed Mr. Juarez on investigative leave, ordering him to leave the workplace and not perform any work. *Id*. at 12-13, ¶¶ 89, 91. Despite Mr. Juarez's request, the City did not provide any reason why it placed him on leave. *Id*. at 12, ¶ 90.  Mr. Juarez's investigative leave lasted until December 15, 2021. *Id*. at 13, ¶ 93.

On December 21, 2021, the City issued Mr. Juarez a second notification of contemplated discipline (the "December 2021 Notification"), which alleged that Mr. Juarez engaged in misconduct by recording conversations in the workplace. *Id*., ¶¶ 94-95.  However, the City allowed at least four white employees to use recordings in the workplace. *Id*., ¶ 97.  On December 21, 2021, Mr. Juarez submitted a workplace grievance form to the City complaining about retaliation and discriminatory pay practices, as well as informing the City that Mr. Juarez contacted the United States Equal Employment Opportunity Commission ("EEOC") on November 8, 2021 to file a complaint. *Id*. at 3, 14, ¶¶ 12, 99.  On December 31, 2021, Mr. Hensley completed Mr. Juarez's annual performance review and rated him as "Development Needed," which

was the lowest evaluation rating that Mr. Juarez had ever received during his employment with the City. *Id*. at 14, ¶¶ 100-101.  On January 28, 2022, the City issued a disciplinary decision ("January 2022 Decision") regarding the December 2021 Notification, finding that "no discipline was warranted." *Id*. at 15, ¶¶ 107-108.

On February 14, 2022, Mr. Juarez emailed Mr. Washington, Mr. Hensley, and Mr. Jaquith complaining about Mr. Hensley "perpetuating a culture of discrimination and retaliation" within the Department and Mr. Helsey's race-based comments on May 18, 2021. *Id*., ¶ 109.  On February 18, 2022, Mr. Juarez emailed Mayor Michael Hancock, Mr. Washington, and Mr. Jaquith a recording of Ms. Smith confirming that she heard Mr. Hensley make the race-based comments. *Id*. at 15-16, ¶ 110.  On February 22, 2022, Mr. Juarez gave his resignation notice to the City. *Id*. at 17, ¶ 119.  On February 23, 2022, Lisa Korock, a human resources employee, interviewed Mr. Juarez and assured him that defendant would conduct an investigation into Mr. Hensley's conduct. *Id*. at 16, ¶ 111.  However, on February 28, Ms. Korock blocked Mr. Juarez's email address. *Id*., ¶ 116.

Mr. Juarez's last day of employment with the City was March 4, 2022. *Id*. at 17, ¶ 120.  The City hired William McDonald, a white man with a high school education, for Mr. Juarez's position and paid Mr. McDonald a salary of $145,000. *Id*., ¶ 122.  Mr. Juarez began employment with a different employer on March 7, 2022. *Id*. at 4, ¶ 23.  On May 5, 2022, the City fired Mr. Hensley. *Id*. at 19, ¶ 130.  On June 6, 2022, Mr. Juarez filed a charge of retaliation and discrimination with the EEOC. *Id*. at 3, ¶ 12.  On December 22, 2022, the EEOC issued Mr. Juarez a right to sue letter. *Id*., ¶ 13.

Mr. Juarez asserts eleven claims in his amended complaint.  *Id*. at 20-52.  Mr. Juarez asserts seven claims under Title VII of the Civil Rights Act of 1964 ("Title VII") for (1) retaliation; (2) national origin discrimination based on "Pay Disparity;" (3) national origin discrimination; (4) color discrimination based on "Pay Disparity;" (5) color discrimination; (6) a hostile work environment based on national origin; and (7) a hostile work environment based on "retaliatory harassment."  *Id*. at 20-44.  Mr. Juarez also asserts four claims under 42 U.S.C. § 1983 for violations of the Equal Protection Clause, including (8) national origin discrimination; (9) retaliation; (10) hostile work environment; and (11) "retaliatory harassment."  *Id*. at 44-52.  On June 29, 2023, the City filed a motion to dismiss all of Mr. Juarez's claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  Docket No. 28.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible."  *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).  A court, however, does not need to

accept conclusory allegations.  *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("we are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (alterations omitted).

## III.    ANALYSIS

The City argues that the Court should dismiss Mr. Juarez's Title VII claims as untimely.  Docket No. 28 at 4-6.  Additionally, the City asserts that Mr. Juarez has failed to state a claim for retaliation, disparate treatment, or hostile work environment under Title VII.  *Id*. at 6-12.  Finally, the City argues that Mr. Juarez has failed to state a claim under 42 U.S.C. § 1983.  *Id*. at 13-15.[5]

---

[5] The City also contends that the Court should dismiss plaintiff's second through seventh claims to the extent these claims assert a cause of action under 42 U.S.C. § 1981.  Docket No. 28 at 12-13.  In his response, Mr. Juarez asserts that he does not

### A.  **Timeliness of the Title VII Claims**

The City argues that Mr. Juarez's Title VII claims are untimely.  *Id*. at 4.  The City

contends that any allegations that occurred prior to August 10, 2021 are time barred

and cannot support Mr. Juarez's Title VII claims because such allegations occurred

more than 300 days before Mr. Juarez filed his EEOC charge on June 6, 2022.  *Id*. at 4-

5.  The City appears to argue that Mr. Juarez's complaint contains many allegations

"reiterating the initial assumed protected activity," namely, Mr. Juarez's complaint to Mr.

Hensley about pay disparity around May 2021.  *See id*. at 5-6 (citing Docket No. 24 at 7,

¶ 49).  The City states that Mr. Juarez's "repeated references to the same original time-

barred alleged discrete act of discrimination are not new discrete acts," and therefore all

Title VII claims should be dismissed.  *Id*. at 6.

Mr. Juarez responds that his Title VII claims are timely.  Docket No. 31 at 3.  Mr.

Juarez argues that, for his hostile work environment claims, the Court may consider any

allegations prior to August 10, 2021 under the continuing violation doctrine.  *Id*. at 8.

Mr. Juarez asserts that an employee need only file a charge within 300 days of any act

that is part of the hostile work environment.  *Id*. (citing *Nat'l R.R. Passenger Corp. v.*

*Morgan*, 536 U.S. 101, 116 (2002)).  Regarding his retaliation claim, Mr. Juarez

contends that the 300-day period for filing an EEOC retaliation charge runs from the

date of the materially adverse action, not from the date of the protected activity.  *Id*. at 4.

Regarding his disparate treatment claims alleging discrimination in compensation, Mr.

---

raise any "distinct, separate discrimination, retaliation, or harassment claims under
Section 1981," but rather seeks remedies under section 1981.  Docket No. 31 at 14-15.
The City concedes in its reply that this argument is moot.  Docket No. 32 at 1.
Accordingly, the Court declines to address this argument.

Juarez appears to argue that the discriminatory action "is not a single event," but rather accrues on each pay period.  *See id*. at 6.

"An employee wishing to challenge an employment practice under Title VII must first 'file' a 'charge' of discrimination with the EEOC."  *Montes v. Vail Clinic, Inc*., 497 F.3d 1160, 1163 (10th Cir. 2007) (citing 42 U.S.C. § 2000e–5(e)(1)).  Under the statute, "an employee must file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment practice giving rise to the charge unless the employee has initially instituted proceedings with a State or local agency, in which case the employee has 300 days to file her EEOC charge."  *Salemi v. Colo. Pub. Emp. Ret. Ass'n*, 747 F. App'x 675, 688 (10th Cir. 2018) (unpublished) (citing 42 U.S.C. § 2000e–5(e)(1)).  Here, the parties agree that the 300-day filing period applies, *see* Docket No. 28 at 4; Docket No. 31 at 4, and the Court will therefore apply the 300-day filing period.[6]

"Each discrete incident of discriminatory or retaliatory treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted."  *Salemi*, 747 F. App'x at 688 (quoting *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (alterations omitted)).  The 300-day limitation period begins on "the date the employee is notified of an adverse employment decision by the employer." *Daniels v. United Parcel Serv., Inc*., 701 F.3d 620, 628 (10th Cir. 2012) (quoting *Davidson v. Am. Online, Inc*., 337 F.3d 1179, 1187 (10th Cir. 2003)).  "When a complaint alleges multiple discrete acts, the limitations period runs separately for each

---

[6] The amended complaint does not state whether Mr. Juarez instituted proceedings before a State or local agency.  However, given the parties' agreement that the 300-day limitation period applies, the Court will apply that period in resolving the motion to dismiss.

act." *Id*. (citing *Davidson*, 337 F.3d at 1185).  Therefore, with respect to claims based on discrete acts of discrimination or retaliation, the Court may not consider incidents occurring more than 300 days prior to a plaintiff's EEOC charge.  *Salemi*, 747 F. App'x at 688; *Morgan*, 536 U.S. at 114.

However, hostile work environment claims are subject to the continuing violation doctrine, which allows a plaintiff to recover "for discriminatory acts that occurred prior to the statutory limitations period if they are part of a continuing policy or practice that includes the act or acts within the statutory period."  *Daniels*, 701 F.3d at 631-32 (quoting *Davidson*, 337 F.3d at 1183).[7]  "A hostile work environment claim is 'composed of a series of separate acts that collectively constitute one unlawful employment practice.'"  *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021) (quoting *Morgan*, 536 U.S. at 117).  Hostile work environment claims "are based on the cumulative effect of individual acts" and therefore "cannot be said to occur on any particular day."  *Morgan*, 536 U.S. at 115.  Accordingly, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability," provided that at least one act "contributing to the [hostile work environment claim] occur[red] within the filing period."  *Id*. at 117.

Mr. Juarez filed his EEOC charge on June 6, 2022.  Docket No. 24 at 3, ¶ 12. Therefore, regarding his claims for disparate treatment and retaliation, Mr. Juarez cannot rely on any discriminatory or retaliatory incidents that occurred prior to August 10, 2021.  *See Salemi*, 747 F. App'x at 688; *Morgan*, 536 U.S. at 114.  Mr. Juarez

---

[7] In *Morgan*, the Supreme Court rejected the continuing violation doctrine for discrete acts of discrimination or retaliation.  *Potter*, 347 F.3d at 1210 (citing *Morgan*, 536 U.S. at 110-13).

alleges several materially adverse actions for his retaliation claim that occurred after August 10, 2021, including the November 2021 Decision and the negative performance evaluation.  *See* Docket No. 24 at 11, 14, ¶¶ 83-84, 100-101.  Accordingly, the Court rejects the City's argument that Mr. Juarez's retaliation claim is untimely.

Furthermore, the Court finds that Mr. Juarez's disparate treatment claims, based on the pay disparity between his and Mr. Kramer's salaries, are timely.  The Fair Pay Act amended Title VII, providing that

> [A]n unlawful employment practice occurs, with respect to discrimination in compensation in violation of [Title VII], . . . when an individual is affected by application of a *discriminatory compensation decision or other practice*, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

*Daniels*, 701 F.3d at 630 (quoting 42 U.S.C. § 2000e–5(e)(3)(A)); *see also Salemi*, 747 F. App'x at 689 n.7 (noting that the Fair Pay Act amended Title VII to "subject claims based on disparate pay to the continuing violation theory for purposes of exhaustion such that each new incident of disparate pay resets the time period for filing an EEOC charge").  Therefore, Mr. Juarez's disparate treatment claims are timely because the City paid compensation to Mr. Juarez within 300 days of his EEOC charge.  *See* Docket No. 24 at 17, ¶ 120 (alleging that Mr. Juarez's last workday was March 4, 2022).  The Court rejects the City's argument that Mr. Juarez's disparate treatment claims should be dismissed as untimely.

Finally, the Court rejects defendant's argument that the hostile work environment claims are untimely.  As discussed previously, under the continuing violation doctrine, "the entire time period of the hostile environment may be considered" provided that at least one act "contributing to the [hostile work environment claim] occur[red] within the

filing period." *Morgan*, 536 U.S. at 117.  Ordinarily, the next step would be to "determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Hansen v. SkyWest Airlines*, 844 F.3d 914, 923 (10th Cir. 2016) (quoting *Morgan*, 536 U.S. at 120).  The Tenth Circuit has "recognized several non-exclusive factors to guide the analysis," including whether the acts were "related by type, frequency, and perpetrator" and "whether the acts occurred when the employee was working in the same place." *Id*. (internal quotations and citations omitted). However, the City does not apply these factors or make any argument that Mr. Juarez's hostile work environment claims do not contain any act falling within the statutory period.  Accordingly, the Court denies this portion of the City's motion.  *See Equal Emp. Opportunity Comm'n v. Jackson Nat'l Life Ins. Co.*, No. 16-cv-02472-PAB-SKC, 2018 WL 4360442, at *7 (D. Colo. Sept. 13, 2018) (declining to evaluate the non-exclusive factors in *Hansen* when defendants failed to address the factors).

### B.  Title VII Retaliation Claim – Claim One[8]

Mr. Juarez's first cause of action asserts a retaliation claim under Title VII. Docket No. 24 at 20-24, ¶¶ 137-149.  Title VII forbids retaliation against an employee because he has "opposed" any practice made unlawful by Title VII or because he has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  Where there is

---

[8] The City confusingly discusses Mr. Juarez's Title VII retaliation, disparate treatment, and hostile work environment claims interchangeably in the same section. *See* Docket No. 28 at 6-12.  The Court will evaluate the claims separately because the claims have different legal standards.

no direct evidence of retaliation, the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to retaliation claims brought under Title VII.  *Singh v. Cordle*, 936 F.3d 1022, 1042 (10th Cir. 2019).[9]

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show: (1) that he engaged in "protected opposition to discrimination;" (2) he suffered a "materially adverse action;" and (3) a "causal connection" existed between the protected activity and the materially adverse action.  *Id.*; *see also Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021).  The City agrees that Mr. Juarez engaged in "protected opposition to discrimination."  Docket No. 28 at 8.  However, the City argues that Mr. Juarez has failed to allege a materially adverse action.  *Id.* at 8-9.

To establish the second element of a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1133 (10th Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  A materially adverse action "is not limited to discriminatory actions that affect the terms and conditions of employment."  *Id.* (quoting *Burlington*, 548 U.S. at 64).  Rather, actions that pose "a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects" may constitute materially adverse actions.  *Id.* (quoting *Annett v. Univ. of Kan.*, 371 F.3d

---

[9] The City and Mr. Juarez both appear to analyze the retaliation claim under the *McDonnell Douglas* framework.  *See* Docket No. 28 at 7; Docket No. 31 at 10-12. Because neither party argues that Mr. Juarez's first claim involves direct evidence of retaliation, the Court will evaluate the claim under the *McDonnell Douglas* framework.

1233, 1239 (10th Cir. 2004)).  The inquiry into whether actions are "materially adverse is an objective one—that is, whether a reasonable person would [] have been dissuaded from engaging in protected activity—and is 'not based on a plaintiff's personal feelings.'" *Dye v. Moniz*, 672 F. App'x 836, 841 (10th Cir. 2016) (unpublished) (quoting *Daniels*, 701 F.3d at 638).

The amended complaint alleges that Mr. Juarez suffered eighteen materially adverse actions.  Docket No. 24 at 21-24, ¶ 144 (1)-(18).  The City argues that none of the eighteen actions constitute a materially adverse action.  Docket No. 28 at 8.  For example, the City asserts that Mr. Juarez's written reprimand is not a materially adverse action because Mr. Juarez fails to allege how the reprimand affected his employment status.  *Id*. (citing *Kincaid v. Unified Sch. Dist. No. 500, Kan. City, Kan.*, 572 F. Supp. 3d 1081, 1094 (D. Kan. 2021)).  The City contends that Mr. Juarez's performance evaluation is not a materially adverse action because there are no allegations that this evaluation "led to discipline."  *Id*. at 10-11.  The City also appears to argue that the eighteen actions were not adverse because Mr. Juarez continued complaining about pay discrimination through the last day of his employment.  *Id*. at 9-10.

Mr. Juarez responds that the City subjected him to numerous materially adverse actions, including the October 2021 Notification, the November 2021 Decision imposing the written reprimand; the investigatory leave, the December 2021 Notification, and the negative performance evaluation.  Docket No. 31 at 10-12.  Mr. Juarez contends that several courts have found that written reprimands and negative performance evaluations can constitute materially adverse employment actions.  *Id*. at 12, 14 (citing

*Millea v. Metro-N. R. Co.*, 658 F.3d 154, 165 (2d Cir. 2011); *Walker v. Johnson*, 798

F.3d 1085, 1095 (D.C. Cir. 2015)).

The Court finds that Mr. Juarez has plausibly alleged that he suffered a materially

adverse action.  Mr. Juarez alleges that, ten days after he filed a workplace grievance

form, Mr. Hensley gave Mr. Juarez his annual performance review with a rating of

"Development Needed," which was the lowest evaluation rating that Mr. Juarez ever

received during his employment with the City.  Docket No. 24 at 14, ¶¶ 99-101.  The

Tenth Circuit has held that a negative performance evaluation can constitute a

materially adverse action for a retaliation claim.  *See MacKenzie v. City & Cnty. of*

*Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005) (finding that a "below expectations" job

performance rating was an adverse action for a retaliation claim), *abrogated on other*

*grounds by Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018); *see also Busby v.*

*City of Tulsa*, 306 F. Supp. 3d 1305, 1319 (N.D. Okla. 2018) (concluding that a

performance evaluation was a materially adverse action because the "evaluation was

the worst that [plaintiff] had received in over 30 years").  Furthermore, Mr. Juarez

alleges that, even though he did not engage in any misconduct, the City issued its

November 2021 Decision imposing a written reprimand on Mr. Juarez and warning him

that "[f]urther misconduct may be cause for additional disciplinary action, up to and

including dismissal."  Docket No. 24 at 11, ¶¶ 77, 83-84.  "Disciplinary proceedings,

such as warning letters and reprimands, can constitute an adverse employment action"

for a retaliation claim.  *Medina v. Income Support Div., N.M.*, 413 F.3d 1131, 1137 (10th

Cir. 2005).  A reprimand is an adverse employment action if it "affects the likelihood that

the plaintiff will be terminated, undermines the plaintiff's current position, or affects the

plaintiff's future employment opportunities." *Id*.  Here, the Court finds that Mr. Juarez has adequately alleged that the written reprimand is a materially adverse action because the reprimand could have affected the likelihood that Mr. Juarez would be terminated or could have affected his future employment prospects.  The written reprimand warned Mr. Juarez that "[f]urther misconduct" could result in his "dismissal." Docket No. 24 at 11, ¶ 84.  These allegations are sufficient at the motion to dismiss stage to establish that the November 2021 Decision would dissuade a reasonable employee from making or supporting a charge of discrimination. *See Dial v. McDonough*, 2022 WL 17289152, at *13 (D. Kan. Nov. 29, 2022) (finding that an "unwarranted letter of reprimand could dissuade a reasonable worker from making or supporting a charge of discrimination").  Accordingly, the Court finds that Mr. Juarez has plausibly established the second element of his retaliation claim.  The Court therefore denies the portion of defendant's motion seeking dismissal of the retaliation claim.

## C. <u>Title VII Disparate Treatment Claims – Claims Two, Three, Four, and Five</u>

Mr. Juarez's second, third, fourth, and fifth claims assert that the City subjected him to disparate treatment under Title VII based on his national origin and color.  Docket No. 24 at 24-29, ¶¶ 150-196.  Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Such claims can be demonstrated either by "direct evidence that a workplace policy, practice, or decision relies expressly on a protected

characteristic" or by "using the burden-shifting framework set forth in *McDonnell Douglas*."  *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 213 (2015).[10]

Generally, to establish a *prima facie* case of disparate treatment, a plaintiff must show that (1) he "belongs to a protected class;" (2) he suffered an "adverse employment action;" and (3) the adverse employment action occurred under circumstances giving "rise to an inference of discrimination."  *Ibrahim v. All. for Sustainable Energy, LLC*, 994 F.3d 1193, 1196 (10th Cir. 2021).  A plaintiff's burden at the *prima facie* stage is "not onerous."  *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1267 (10th Cir. 2015) (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).  At the motion to dismiss stage, a "complaint raising a claim of discrimination does not need to conclusively establish a prima facie case of discrimination, but . . . a plaintiff must include enough context and detail to link the allegedly adverse employment action to a discriminatory [] motive with something besides 'sheer speculation.'"  *Bekkem v. Wilkie*, 915 F.3d 1258, 1274-75 (10th Cir. 2019) (quoting *Khalik*, 671 F.3d at 1194).

Although the City states that it is moving to dismiss all the disparate treatment claims, *see* Docket No. 28 at 6-7, the City does not discuss each claim.  Instead, as noted previously, the City confusingly discusses the disparate treatment claims together with its retaliation and hostile work environment arguments.  The City appears to focus on the disparate treatment claims regarding "pay equity," *see id.* at 10, which would seem to be Mr. Juarez's second and fourth claims.  *See* Docket No. 24 at 24-28.

---

[10] The City and Mr. Juarez both appear to analyze the disparate treatment claims under the *McDonnell Douglas* framework.  *See* Docket No. 28 at 7; Docket No. 31 at 14. Because neither party argues that Mr. Juarez's disparate treatment claims involve direct evidence of discrimination, the Court will evaluate the claims under the *McDonnell Douglas* framework.

Accordingly, the Court will only address the second and fourth claims, alleging that Mr. Juarez experienced discrimination in compensation because of his color and national origin.[11]

Discrimination claims based on compensation have a different *prima facie* test than typical disparate treatment claims. *See Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005) ("the articulation of a plaintiff's prima facie case may well vary, depending on the context of the claim and the nature of the adverse employment action alleged."). To state a *prima facie* case of wage discrimination under Title VII, a plaintiff must show that (1) he is a member of a protected class, and (2) he "occupied a job similar to higher paid jobs occupied by" employees outside the protected class. *Daniels*, 701 F.3d at 636 (citing *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1311 (10th Cir. 2006)). "Of course, if there are no similarly situated co-workers, the employee may be able to make out a claim with evidence that a person outside the protected class would have been paid more for doing the same job." *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1181 (10th Cir. 2011); *see also Taylor v. Kaiser Found. Health Plan of Colo.*, 640 F. Supp. 3d 1008, 1032 (D. Colo. 2022). If plaintiff makes this *prima facie* showing, then the burden shifts to defendant to articulate a "legitimate, nondiscriminatory reason for the [pay] disparity." *Daniels*, 701 F.3d at 636. If defendant articulates a legitimate

---

[11] To the extent that the City's arguments apply to plaintiff's third and fifth claims, the Court declines to consider these arguments because the City failed to clearly discuss the third and fifth claims. *See United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("The court will not consider . . . issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." (citation and internal quotations omitted)); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

non-discriminatory reason, then the burden shifts to plaintiff to establish that the stated reason is "pretextual." *Id*.

The City agrees that Mr. Juarez is a member of a protected class. Docket No. 28 at 8. However, the City argues that Mr. Juarez "alleges no facts that similarly situated employees received disparate treatment regarding pay equity other than that Mr. Kramer was a white male and paid a different salary." *Id*. at 10. The City asserts that Mr. Juarez does not allege whether he and Mr. Kramer had different "experience levels" or "differences in job duties." *Id*. Mr. Juarez responds that he adequately alleged that Mr. Kramer and plaintiff held the same position of Airport Commercial Director, yet Mr. Kramer received a higher salary. Docket No. 31 at 14.

The Court finds that Mr. Juarez has plausibly alleged his wage discrimination disparate treatment claims. Mr. Juarez is a member of a protected class because he identifies his color as "Brown" and his national origin as "Hispanic and/or Mestizo." *See* Docket No. 24 at 4, ¶¶ 19-20. Mr. Juarez held the position of Director of Parking, with a job classification of Airport Commercial Director, and had a salary of $120,000. *Id*. at 6, ¶¶ 41, 44. The City hired Mr. Kramer, a white man, as the Director of Commercial Transportation, which also had a job classification of Airport Commercial Director, and had a salary of $138,000. *Id*., ¶¶ 42-44. Furthermore, when Mr. Juarez resigned, the City hired Mr. McDonald, a white man with a high school education, to replace plaintiff and paid Mr. McDonald a salary of $145,000. *Id*. at 17, ¶ 122. At the motion to dismiss stage, the Court finds that these allegations are sufficient to establish that Mr. Juarez "occupied a job similar to higher paid jobs occupied by" employees outside his protected class. *See Daniels*, 701 F.3d at 636; *Allen v. Wal-Mart Stores, Inc.*, No. 19-cv-03594-

KLM, 2021 WL 4133914, at *4 (D. Colo. Sept. 10, 2021) (noting that, at the *prima facie* stage, a plaintiff "need only show that her job was similar to that of a higher paid" employee outside her protected class). The Court therefore denies the portion of defendant's motion seeking dismissal of the Title VII wage discrimination claims.

### D.  Title VII Hostile Work Environment Claims – Claims Six and Seven

Mr. Juarez's sixth cause of action asserts a hostile work environment claim based on national origin and his seventh cause of action asserts a hostile work environment claim based on "retaliatory harassment." Docket No. 24 at 29-44, ¶¶ 197-287. As a preliminary matter, the Court notes that it is questionable whether Mr. Juarez can pursue a hostile work environment claim based on "retaliatory harassment." A cause of action for "retaliatory hostile work environment" has "not been formally recognized by the Tenth Circuit." *Kline v. Utah Anti-Discrimination & Lab. Div.*, 418 F. App'x 774, 780 n.2 (10th Cir. 2011) (unpublished). However, several district courts in this Circuit have recognized claims for a retaliatory hostile work environment. *See, e.g., Kincaid*, 572 F. Supp. 3d at 1089-90; *Porter v. Regents of Univ. of Colo.*, No. 22-cv-00335-MDB, 2023 WL 2664207, at *10 n.8 (D. Colo. Mar. 28, 2023); *Britten v. Mountain View Elec. Ass'n, Inc.*, No. 17-cv-2294-WJM-NYW, 2019 WL 2470748, at *10 (D. Colo. June 13, 2019). The City does not contest Mr. Juarez's ability to bring this type of hostile work environment claim, *see* Docket No. 28 at 11-12, and therefore it is unnecessary for the Court to rule on whether a retaliatory harassment claim is a viable claim.

As discussed previously, a "hostile work environment claim is 'composed of a series of separate acts that collectively constitute one unlawful employment practice.'"

*Throupe*, 988 F.3d at 1251 (quoting *Morgan*, 536 U.S. at 117).  To establish a hostile work environment claim, a plaintiff must show that (1) he was discriminated against because of a protected category, such as national origin, and (2) that the discrimination was "sufficiently severe or pervasive such that it altered the terms or conditions of [his] employment and created an abusive working environment."  *Morris v. City of Colo. Springs*, 666 F.3d 654, 663 (10th Cir. 2012); *see also Throupe*, 988 F.3d at 1251; *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012).[12]

The City argues that the Court should dismiss both hostile work environment claims because the complaint fails to establish that any alleged harassment was severe or pervasive or that the alleged harassment was based on Mr. Juarez's national origin. Docket No. 28 at 2.  Because neither party distinguishes between the two hostile work environment claims in the briefing, *see* Docket No. 28 at 11-12; Docket No. 31 at 7-8, the Court will review the hostile work environment allegations as one aggregated claim. *See Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1227 (10th Cir. 2022) (noting that "aggregation" of multiple forms of hostility is "permissible" and a trial court may consider two hostile work environment claims as a single claim or as separate claims).

### 1.  *Severe or Pervasive*

To establish a hostile work environment claim, a plaintiff must demonstrate that defendant's conduct was "sufficiently severe or pervasive such that it altered the terms or conditions of [his] employment and created an abusive working environment." *Morris*, 666 F.3d at 663.  "Proof of either severity or pervasiveness can serve as an

---

[12] Defendant incorrectly suggests that a hostile work environment claim must include an adverse employment action.  *See* Docket No. 28 at 6-7.  The Court rejects this argument.

independent ground to sustain a hostile work environment claim." *Throupe*, 988 F.3d at 1252. Courts analyze severity and pervasiveness under the "totality of the circumstances," considering factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citation omitted). This element has both a subjective and objective component, meaning that the plaintiff "must: (1) subjectively perceive 'the conduct to be severe or pervasive,' and (2) 'show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult.'" *Ford*, 45 F.4th at 1228 (quoting *Throupe*, 988 F.3d at 1252).

"A few isolated incidents of discriminatory conduct and run-of-the mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces are insufficient to support a claim for hostile work environment." *Id.* (internal quotations and citation omitted); *see also Brown v. LaFerry's LP Gas Co., Inc.*, 708 F. App'x 518, 522 (10th Cir. 2017) (unpublished) ("It is well-established that a plaintiff cannot demonstrate pervasive harassment by pointing to a few isolated incidents of racial enmity or sporadic racial slurs" (citation omitted)). As to whether conduct is "severe," the Tenth Circuit has held that "[m]ost incidents found to meet this standard involve some kind of physical assault." *Brown*, 708 F. App'x at 522 (citing *Morris*, 666 F.3d at 666-67). The Tenth Circuit has emphasized that the determination of whether conduct is "severe or pervasive is typically a question for the jury;" however, a court may dismiss a claim when plaintiff fails to make a sufficient showing. *Throupe*, 988 F.3d at 1252; *see also*

*Brown*, 708 F. App'x at 523 (dismissing hostile work environment claim at the motion to dismiss stage).

The City argues that Mr. Juarez has alleged no facts suggesting that he experienced severe or pervasive harassment.  Docket No. 28 at 12; *see also* Docket No. 32 at 2-3.  The City asserts that Mr. Juarez "has offered no facts that even hint at discriminatory comments based on national origin directed at himself, much less that his workplace was permeated with discriminatory intention with regard to his national origin or color."  Docket No. 28 at 11.  The City argues that Mr. Juarez cannot establish the severe or pervasive element "by demonstrating a few isolated incidents of racial enmity or sporadic racial slurs;" rather, "there must be a steady barrage of opprobrious racial comments."  *Id*. (quoting *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005)).

In response, Mr. Juarez does not discuss the severe or pervasive standard or address defendant's arguments.  Mr. Juarez instead states that Mr. Hensley made "offensive racial comments" on May 18, 2021.  Docket No. 31 at 7.  Furthermore, Mr. Juarez argues that the Court may consider his discrete acts of employment discrimination as part of the hostile work environment claims.  *Id*. at 8 (citing *Porter*, 2023 WL 2664207, at *7).

The Court finds that Mr. Juarez has failed to allege that defendant's conduct was "sufficiently severe or pervasive such that it altered the terms or conditions of [his] employment and created an abusive working environment."  *See Morris*, 666 F.3d at 663.  First, the Court finds that Mr. Hensley's comments on May 18, 2021 are isolated incidents.  The amended complaint alleges that, on May 18, 2021, Mr. Hensley stated, "Yes, let's hire a Black guy to sit up front, so it looks good when Phil [Washington]

comes down to our office."  Docket No. 24 at 8, ¶ 58.[13]  That same day, Mr. Hensley repeated similar language about "hiring a black guy" to Ms. Smith.  *Id.*, ¶ 59.  Mr. Juarez describes no other incidents where Mr. Hensley or any other co-workers or supervisors made discriminatory comments that Mr. Juarez overheard.  A "plaintiff does not make a sufficient showing of a pervasively hostile work environment by demonstrating a few isolated incidents of sporadic slurs.  Instead, there must be a steady barrage of opprobrious comments."  *Morris*, 666 F.3d at 666 (internal alterations, quotations, and citation omitted); *see also Brown*, 708 F. App'x at 522-23 (concluding that three racial comments from a supervisor were insufficient to establish that the conduct was pervasive).

Mr. Juarez fails to explain how any of the other allegations in the amended complaint – including his pay disparity, the October 2021 Notification, the November 2021 Decision, the investigative leave, the December 2021 Notification, or his performance evaluation – created a workplace atmosphere "permeated with discriminatory intimidation, ridicule, and insult."  *See Ford*, 45 F.4th at 1228; *Brown*, 708 F. App'x at 523; *see also Chavez*, 397 F.3d at 833 ("what is important in a hostile environment claim is the *environment*").  The amended complaint does not describe how these incidents created "an abusive working environment."  *See Morris*, 666 F.3d at 663; *see also Williams v. FedEx Corp. Servs.,* 849 F.3d 889, 897 (10th Cir. 2017)

---

[13] The complaint does not identify who Mr. Hensley was speaking with or who overheard this conversation.  However, the complaint suggests that Mr. Juarez was aware of Mr. Hensley's May 18, 2021 comments.  *See* Docket No. 24 at 15-16, ¶¶ 109-110; *see also Ford*, 45 F.4th at 1233 (noting that a plaintiff "may only rely on evidence relating to harassment of which she was aware during the time she was allegedly subject to a hostile work environment" (citation omitted)).

(concluding that alleged "disciplinary action" from supervisors was insufficient to demonstrate an atmosphere "permeated with discriminatory intimidation, ridicule, and insult" (citation omitted)).  Many courts have found that a plaintiff cannot rely solely "on the discrete acts upon which he bases his discrimination and retaliation claims to support a hostile [work] environment claim." *Hampton v. Vilsack*, 760 F. Supp. 2d 38, 57 (D.D.C. 2011), *aff'd*, 685 F.3d 1096 (D.C. Cir. 2012); *see also Peters v. D.C.*, 873 F. Supp. 2d 158, 191 (D.D.C. 2012) (collecting cases).  Moreover, the Court finds that Mr. Juarez has failed to show that any of his allegations are sufficiently "severe" to give rise to a cognizable hostile work environment claim. *See Brown*, 708 F. App'x at 522 (describing that the severity standard typically involves "some kind of physical assault").

Ultimately, there "is no indication that the relatively isolated incidents in this case 'altered the terms or conditions of [plaintiff's] employment and created an abusive working environment." *Morris*, 666 F.3d at 669.  As a result, the Court finds that the amended complaint does not plausibly allege an inference of severe or pervasive conduct sufficient to establish a hostile work environment claim.

### 2.  *Because of National Origin*

Even if the amended complaint plausibly alleged the severe or pervasive prong, Mr. Juarez would also need to allege that he was discriminated against "because of" a protected status, such as national origin. *See Throupe*, 988 F.3d at 1251; *Unal v. Los Alamos Pub. Sch.*, 638 F. App'x 729, 736 (10th Cir. 2016) (unpublished) ("a plaintiff must show harassment stemming from animus toward her national origin").  "Although evidence of animus directed at a plaintiff's particular nationality provides the strongest evidence of a hostile work environment, evidence of a general work atmosphere,

including evidence of harassment of other nationalities, may be considered in evaluating

a claim, as long as plaintiff presents evidence that she knew about the offending

behavior." *Unal*, 638 F. App'x at 736 (internal quotations, citations, and alterations

omitted). "[F]acially neutral abusive conduct" can support a finding of national origin

animus when that conduct is viewed in the context of other, "overtly" discriminatory

conduct based on national origin. *Hernandez*, 684 F.3d at 960 (noting that a plaintiff

"can use a substantial amount of arguably [national origin]-neutral harassment to bolster

a smaller amount of [national origin]-based conduct"); *see also Unal*, 638 F. App'x at

736.

The City argues that Mr. Juarez has alleged no facts suggesting that any

discriminatory conduct or remarks were based on his national origin. Docket No. 28 at

12; *see also* Docket No. 32 at 3. Mr. Juarez does not address this argument in his

response.

The Court finds that Mr. Juarez has failed to allege that any of the conduct was

motivated by his national origin. Mr. Hensley's comments on May 18, 2021 did not

reference Mr. Juarez's or any other employee's national origin. *See* Docket No. 24 at 8,

¶¶ 58-59. Furthermore, the other incidents that Mr. Juarez includes in his hostile work

environment claim – including the October 2021 Notification, the November 2021

Decision, the investigative leave, the December 2021 Notification, and the performance

evaluation – also do not contain allegations of national origin animus. *See id*. at 10-14,

¶¶ 75-76, 78, 83-84, 89-91, 94-95, 100-101; *see also Montano v. Brennan*, 718 F. App'x

690, 694 (10th Cir. 2017) (unpublished) (holding that, even if "unwarranted disciplinary

proceedings" satisfied the severe or pervasive prong, plaintiff failed to show any

evidence that the disciplinary proceedings were "motivated by [her] gender"); *Brown*, 708 F. App'x at 523 (finding that plaintiff failed to "allege that his co-workers were racially motivated when they stopped speaking to him in the two or three weeks before he resigned").  Mr. Juarez has failed to show how these facially neutral incidents could support a finding of national origin animus when he has not alleged any other overtly discriminatory conduct based on national origin in his workplace.  *Cf. Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1174-76 (10th Cir. 2020) (holding that, "[w]hen considered alongside the facially sex-based incidents, a jury could find that other hostile acts, which were not explicitly sexual in nature, were nevertheless part of the sexual harassment," particularly considering the evidence that plaintiff's division "as a whole does not accept females"); *Unal*, 638 F. App'x at 736-38 (holding that a reasonable jury could conclude that "facially neutral incidents were products of a larger environment of hostility toward foreign-born individuals" given the totality of the evidence, including the overt comments directed at plaintiff regarding her nationality and overt comments directed at individuals of other nationalities).  The amended complaint contains no allegations suggesting that Mr. Juarez's workplace was permeated with general hostility towards individuals of a different national origin.

Accordingly, the Court finds that Mr. Juarez has failed to plausibly allege that defendant's conduct was "sufficiently severe or pervasive such that it altered the terms or conditions of [his] employment and created an abusive working environment," *see Morris*, 666 F.3d at 663, and Mr. Juarez has failed to allege facts showing that any harassment was based on his national origin.  *See Montano*, 718 F. App'x at 694.  As a

result, the Court grants this portion of defendant's motion and dismisses Mr. Juarez's

hostile work environment claims with prejudice.

### E.  <u>Section 1983 Claims – Claims Eight, Nine, Ten, and Eleven</u>

Mr. Juarez's eighth, ninth, tenth, and eleventh causes of action assert Equal

Protection Clause claims under 42 U.S.C. § 1983 for national origin discrimination,

retaliation, hostile work environment, and "retaliatory harassment."  Docket No. 24 at

44-52, ¶¶ 288-347.[14]  Local governments may not be sued under 42 U.S.C. § 1983 on a

theory of *respondeat superior*.  *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 692

(1978).  Instead, local governing bodies can be sued directly only where "the action that

is alleged to be unconstitutional implements or executes a policy statement, ordinance,

regulation, or decision officially adopted and promulgated by that body's officers."  *Id*. at

690 (footnote omitted).  "[I]t is when execution of a government's policy or custom,

whether made by its lawmakers or by those whose edicts or acts may fairly be said to

represent official policy, inflicts the injury that the government as an entity is responsible

under § 1983."  *Id*. at 694.

In order to state a claim for municipal liability under § 1983 for the actions of a

municipal employee, a party must allege sufficient facts to demonstrate that it is

plausible (1) that the municipal employee committed a constitutional violation; and (2)

that a municipal policy or custom was the moving force behind the constitutional

deprivation.  *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004).  A municipal

policy or custom can take the form of

---

[14] The elements of disparate treatment claim are "the same whether the claim is
brought under Title VII, § 1981 or § 1983."  *Mitchell v. City & Cnty. of Denver*, 112 F.
App'x 662, 670 (10th Cir. 2004) (unpublished).

> (1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (citations omitted).

A plaintiff must also demonstrate "a direct causal link between the policy or custom and the injury alleged." *Id.* (internal quotation marks omitted). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bryan Cnty. Bd. of Comm'rs v. Brown*, 520 U.S. 397, 405 (1997).

The City argues that the Court should dismiss claims eight through eleven because these claims fail for the same reasons as the Title VII claims. Docket No. 28 at 14-15. The City additionally argues that Mr. Juarez has failed to allege a municipal policy or custom and has failed to allege a causal link to any injury. *Id.* Without further explanation, Mr. Juarez responds that his "Section 1983 claims allege a violation of municipal policy and custom in detail." Docket No. 31 at 15 (citing Docket No. 24 at 45-46, ¶¶ 296-298). In reply, the City argues that, to establish an informal custom, Mr. Juarez must allege a pattern of similar incidents, yet he has failed to do so. Docket No. 32 at 11. The City argues that Mr. Juarez cannot establish an informal custom based on a "single incident." *Id.* at 8.

The Court first considers whether Mr. Juarez has adequately pled a municipal policy or custom.  The complaint alleges that the City's "municipal policy or custom" is established by "an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law."  Docket No. 24 at 45, ¶ 295.  Plaintiff alleges that the City's custom or policy includes "Defendant's series of discriminatory activities against Juarez and other minority employees, as previously set forth in this First Amended Complaint."  *Id*., ¶ 296.  Plaintiff also alleges that the City's "policy or custom is established by the decisions and actions of Washington, Hensley, and Jaquith, managers and officials with final policymaking authority concerning Juarez's employment and other minority employees."  *Id*. at 46, ¶ 298.

### 1.  *Custom Amounting to Widespread Practice*

Municipalities may "incur liability when they adopt unconstitutional 'longstanding practice[s] or custom[s]' that become 'standard operating procedure[s].'"  *Murphy v. City of Tulsa*, 950 F.3d 641, 649 (10th Cir. 2019) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).  "In attempting to prove the existence of such a continuing, persistent and widespread custom, plaintiffs most commonly offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way."  *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008).

Here, the complaint only alleges that one individual was similarly mistreated by the City.  The complaint alleges that the City gave Mr. Doe, a Black man, a seven percent salary increase after his promotion, while the City gave Mr. Keith, a white man, a thirty-seven percent salary increase after his promotion.  Docket No. 24 at 8-9, ¶¶ 54,

63-64.  The complaint contains no allegations suggesting that other employees experienced wage discrimination, similar retaliation, or proposed disciplinary action as Mr. Juarez.  The Court finds that one alleged incident, occurring contemporaneously with the allegations in this complaint, is insufficient to show a practice so permanent and well settled that it constitutes a custom or usage with the force of law.  *See Bryson*, 627 F.3d at 788; *see also Hernandez v. City & Cnty. of Denver*, No. 21-cv-01538-PAB-MEH, 2022 WL 3597452, at *6 (D. Colo. Aug. 23, 2022) (holding that four incidents of excessive force were insufficient to establish an informal custom); *Lankford v. City of Hobart*, 73 F.3d 283, 287 (10th Cir. 1996) (noting that "isolated and sporadic acts" of sexual harassment do not establish municipal liability for § 1983); *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1290 (10th Cir. 2019) ("[D]escribing only one similar incident of excessive force prior to his own injuries—fall[s] far short of plausibly alleging a 'widespread practice' of excessive force, much less a practice 'so permanent and well settled as to constitute a custom or usage with the force of law.'" (quoting *Bryson*, 627 F.3d at 788)).[15]  Therefore, Mr. Juarez has not adequately pled municipal liability pursuant to an informal custom.

### 2.  Decisions of Employees with Final Policymaking Authority

In deciding "whether an individual is legally a final policymaker for a municipality," three factors are considered: (1) "whether the official is meaningfully constrained by policies not of that official's own making;" (2) whether the individual's decision is "final"

---

[15] The Tenth Circuit has held that "a single incident may suffice when caused by an existing policy that 'can be attributed to a municipal policymaker.'"  *Murphy*, 950 F.3d at 649.  However, as discussed below, Mr. Juarez has not established the existence of a policy that is attributable to a municipal policymaker.

or subject to "meaningful review;" and (3) if the decision "is within the realm of the official's grant of authority." *Brammer-Hoelter v. Twin Peaks Charter Acad*., 602 F.3d 1175, 1189 (10th Cir. 2010). Here, the amended complaint states in a conclusory manner that Mr. Washington, Mr. Hensley, and Mr. Jaquith are officials with "final policymaking authority concerning Juarez's employment and other minority employees." Docket No. 24 at 46, ¶ 298. The amended complaint contains no allegations suggesting whether Mr. Washington, Mr. Hensley, and Mr. Jaquith are meaningfully constrained by any policies or whether their personnel decisions are final or subject to meaningful review. *See Brammer-Hoelter*, 602 F.3d at 1189. Accordingly, the Court finds that the amended complaint does not contain sufficient allegations to suggest that Mr. Washington, Mr. Hensley, and Mr. Jaquith are employees with final policymaking authority. Accordingly, Mr. Juarez has failed to establish municipal liability pursuant to decisions of employees with final policymaking authority.

The Court therefore grants this portion of defendant's motion and dismisses the eighth, ninth, tenth, and eleventh claims with prejudice.[16]

---

[16] Furthermore, although neither party addresses this issue, the Court finds that Mr. Juarez "may not bring claims for retaliation under the Equal Protection Clause because no cause of action exists for retaliation under the Fourteenth Amendment." *Lawrence v. Sch. Dist. No. 1*, No. 11-cv-02789-PAB-KMT, 2013 WL 791436, at *2 n. 5 (D. Colo. Mar. 4, 2013) (collecting cases); *see also Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1266 (10th Cir. 2013) (discussing how plaintiff "also brought a retaliation claim under § 1983 asserting a denial of equal protection, but this court does not recognize such a claim."). Accordingly, Mr. Juarez's retaliation claim under section 1983 is subject to dismissal for this reason as well.

## IV.     CONCLUSION

It is therefore

**ORDERED** that defendant's Motion to Dismiss [Docket No. 28] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that plaintiff's sixth, seventh, eighth, ninth, tenth, and eleventh claims are **DISMISSED with prejudice**.

DATED March 15, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge